ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-40060-01-JAR |
| ) | |
| JULIO RUBEN RUIZ-LOPEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM ORDER AND OPINION GRANTING DEFENDANT'S MOTION TO SUPPRESS

This matter comes before the Court on defendant Julio Ruben Ruiz-Lopez's Motion to Suppress (Doc. 12). In his motion, defendant moves to suppress evidence obtained after a traffic stop and subsequent search of the vehicle he was driving on June 10, 2005. The Court held a hearing on defendant's motion on April 10, 2006. Subsequently, defendant and the government filed supplemental briefs and the government filed a Motion for Hearing on Defendant's Supplement to Motion to Suppress (Doc. 25). After reviewing the parties' filings and the evidence adduced at the hearing, the Court is now prepared to rule. For the reasons stated below, defendant's motion to suppress is granted and the government's motion for hearing is denied.

## I.  Factual Background

On June 10, 2005, at approximately 11:08 p.m., Shawnee County Sheriff's Department Deputy Tracey Trammel stopped a red 1993 Ford pickup on I-70 near mile marker 358 in Shawnee County, Kansas. Deputy Trammel stopped the pickup because there was no tag displayed on the bumper, and he did not see the temporary registration placard that was posted in the rear window of the cab. Upon stopping the vehicle, Deputy Trammel used a spotlight to read

the license number on the temporary tag, but could not discern the state where the tag was issued.

Deputy Trammel then approached the pickup on the driver's side and made contact with the defendant, who had been driving. On his way to the driver's side window, he quickly shone his flashlight on the temporary tag and glanced at it, but did not stop to examine tag. Deputy Trammel told defendant that he stopped him because it "looked like you didn't have a tag on. You couldn't see it." Defendant then handed Deputy Trammel his Mexican driver's license and a bill of sale for the vehicle. Deputy Trammel asked defendant to get out and come to the rear of the vehicle. He asked defendant about his travel plans and about his relationship to the female passenger in the vehicle and noted that defendant appeared nervous.[1] Defendant initially told Deputy Trammel that he had been in Denver to drop off a friend for three days and was traveling back to Kansas City and that he and the passenger were dating. When Deputy Trammel approached the passenger, he noticed that she would not make eye contact with him. She told him that they had stayed in Denver for four or five days and that they were married. She also stated that she was not sure if defendant was employed and was unsure who bought the truck.

Deputy Trammel ran both names through dispatch for a warrant check and also conducted a check of the temporary Missouri license tag. The license tag result was "Record not Found." Because Deputy Trammel believed that defendant had violated a traffic law, he issued him a warning ticket. Deputy Trammel and another officer got out of the patrol car and Deputy Trammel returned defendant's documentation. He told defendant, "Here's your license. Here's your stuff back. That's just a warning ticket, okay? It looked like you didn't have a tag on it

---

[1] On the videotape, defendant immediately attempted to get down on his knees after being asked to step out to the rear of the vehicle, as if he believed he was under arrest.

2

because you can't see it at night.  There's no light on that tag."  The warning ticket states that the violation was "Ill. display tag," but does not refer to a specific Kansas statute, as Deputy Trammel testified that he prefers to write out warning tickets in "layman's terms."  Deputy Trammel shook defendant's hand and after defendant turned and took one step back toward his vehicle, Deputy Trammel inquired whether he could ask him some more questions and defendant agreed.

Deputy Trammel proceeded to ask defendant more questions about his travel plans, which resulted in more discrepancies between defendant and the passenger's accounts.  Deputy Trammel also asked if there were drugs in the vehicle by listing a number of different types of drugs.  When Deputy Trammel mentioned methamphetamine, defendant shrugged his shoulders and said "I don't know."  Defendant then consented to a search of the vehicle.[2]  During the course of the search, Deputy Trammel found methamphetamine under the hood of the vehicle, hidden in the engine compartment.

## II.  Discussion

"'A traffic stop is a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief.'"[3]  The principles of *Terry v. Ohio*[4] apply to such traffic stops.  Thus, the reasonableness of a stop depends on "whether the officer's action was justified at its inception, and whether it was reasonably related

---

[2] Deputy Trammel asked defendant multiple times if he agreed to allow him to search the vehicle.  He testified that defendant was not looking at him when he verbally consented and Deputy Trammel wanted to make sure he understood by making eye contact.

[3] *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc) (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (further quotation omitted)).

[4] 392 U.S. 1 (1968).

in scope to the circumstances which justified the interference in the first place."[5] Tenth Circuit cases establish that "a detaining officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile."[6] Reasonable suspicion may be supported by an "objectively reasonable" good faith belief even if premised on factual error.[7] Here, the defendant does not challenge the initial stop of his vehicle, as Deputy Trammel did not see any license plate when he pulled the vehicle over. "Certainly, a vehicle's apparent failure to display some form of visible license plate/registration tag, temporary or permanent, gives rise to a reasonable suspicion that its driver might be violating any one of the multitude of applicable traffic and equipment regulations of the jurisdiction."[8]

However, defendant does challenge the extended duration of the stop beyond Deputy Trammel ascertaining the temporary license tag information. Even if the initial stop of defendant's vehicle was legitimate, the detention must be "reasonably related in scope to the circumstances which justified the interference in the first place," as required under *Terry*.[9] "Generally, an investigative detention must last no longer than is necessary to effectuate the purpose of the stop."[10] An officer may lengthen the detention for questioning or investigation unrelated to the reason for the initial stop: (1) where the detention has become consensual; or (2)

---

[5] *Id*. at 19–20.

[6] *United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003); *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993).

[7] *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004).

[8] *United States v. Edgerton*, 438 F.3d 1043, 1048 (10th Cir. 2006) (internal quotations omitted).

[9] *United States v. Williams*, 271 F.3d 1262, 1266 (10th Cir. 2001), *cert. denied*, 535 U.S. 1019 (2002); *United States v. Bustillos-Munoz*, 235 F.3d 505, 512 (10th Cir. 2000), *cert. denied*, 534 U.S. 854 (2001).

[10] *Cervine*, 347 F.3d at 870–71 (internal quotation omitted); *United States v. Patten*, 183 F.3d 1190, 1193 (10th Cir. 1999).

if not consensual, where the officer has "'an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring' in order to justify detaining an individual for a period of time longer than that necessary to review a driver's license and vehicle registration, run a computer check, determine that the driver is authorized to operate the vehicle, and issue the detainee a citation."[11]

Here, the justification for the initial stop was that Deputy Trammel could not see a license tag at all. He testified that upon pulling the vehicle over and shining his spotlight on the tag, he could read the numbers, but not the state of origin. He testified that when he approached the vehicle on foot, he observed the state on the tag on his way to the driver's side window where he first spoke with defendant. Defendant argues that the purpose of the stop in this case was satisfied at this point when the Deputy could read all of the relevant information on the apparently valid temporary tag. The government argues that the continued detention of defendant was justified because the tag was in violation of both K.S.A. § 8-133 and K.S.A. § 8-1706(c).[12]

### A. K.S.A. § 8-133

The government concedes that to the extent that the stop in this case is premised on a violation of § 8-133, the Tenth Circuit decision in *United States v. Edgerton*[13] controls. Section 133 provides:

---

[11] *United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998) (quoting *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994)); *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998).

[12] The Court evaluates both grounds cited by the government for the traffic stop, without regard for whether Deputy Trammel intended to stop and/or cite defendant for only the violation of § 8-133. A stop will be constitutional so long as there is an objective basis for carrying it out, even if the ground relied upon by the officer is unconstitutional. *United States v. Ramstad*, 308 F.3d 1139, 1145 n.3 (10th Cir. 2002) (citing *United States v. Bookhardt*, 277 F.3d 558, 565 (D.C. Cir. 2002)); *see Whren v. United States*, 517 U.S. 806, 812–13 (1996).

[13] 438 F.3d 1043, 1048 (10th Cir. 2006).

> Every license plate shall at all times be securely fastened to the
> vehicle to which it is assigned so as to prevent the plate from
> swinging, and at a height not less than 12 inches from the ground,
> measuring from the bottom of such plate, in a place and position to
> be clearly visible, and shall be maintained free from foreign
> materials and in a condition to be clearly legible.

In *Edgerton*, a Kansas State Trooper stopped a vehicle that displayed only a temporary registration tag in the rear window. Because it was nighttime, the trooper was unable to read the state of origin or the numbers on the temporary tag, so he stopped the vehicle. The tag was not obscured in any way, and when the trooper shined his flashlight on the tag, he was able to read it. Then, the trooper asked for the defendant's driver's license and registration papers, which she provided. The trooper prepared a warning citation for a violation of K.S.A. § 8-133. After returning the defendant's license and registration with the citation, the trooper asked and received consent to search the vehicle, leading to the discovery of cocaine.

The court in *Edgerton* held that the detention was unreasonably extended by the trooper asking for the defendant's license and registration because he was able to read the tag clearly upon shining his flashlight on it.[14] The court noted that the government was unable to cite to anything in Kansas law forbidding the placement of a tag in the rear window of the vehicle, or directing it to be fixed at any particular place on the vehicle.[15] The court reasoned that the tag was only illegible to the trooper due to external conditions—*i.e.* the darkness.[16]

The government is correct that *Edgerton* involved an application of § 8-133 "to a fact situation exactly like the instant one." The Court follows *Edgerton* and concludes that to the

---

[14]*Id.* at 1051 ("any suspicion that Defendant had violated § 8-133 dissipated because the tag was in [sic] 'in a place and position to be clearly visible.'").

[15]*Id.* at 1050.

[16]*Id.*

extent the stop was based on a violation of § 8-133, the detention here was unreasonably extended because Deputy Trammel was able to read the information on the tag before he actually reached the driver's side window.  In fact, he merely glanced at the tag while shining his flashlight on it prior to making contact with defendant.  Just as in *Edgerton*, the tag in this case was only illegible to Deputy Trammel due to darkness—an external condition.[17]

### B.  K.S.A. § 8-1706(c)

The government makes an alternative argument that the continued detention was justified because defendant was in violation of § 8-1706(c), which provides:

> (c) Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty (50) feet to the rear. Any tail lamp or tail lamps, together with any separate lamp or lamps for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

Missouri has a virtually identical statute requiring a white light to illuminate the "rear registration marker and render it clearly legible from a distance of fifty feet to the rear.[18]

In his supplemental motion, defendant urges the Court to defer to Missouri law in determining the lawfulness of further detention, pursuant to K.S.A. § 8-138a.  That statute provides that nonresident owners, who are duly licensed in their state of residence, "are hereby granted the privilege of operation of any such vehicle within this state by the state of residence of such nonresident owner[s]."  The government requests a hearing to determine if defendant is, in fact, a resident of Missouri, which it claims is required under the Kansas reciprocity statute.

---

[17]This is supported by Deputy Trammel's testimony, and his statement heard on the tape: " It looked like you didn't have a tag on it because you can't see it at night."  (Ex. 1.)

[18]Mo. Rev. Stat. § 307.075(1).

7

The Court finds that Kansas and Missouri have virtually identical statutes that require a light or lamp to be constructed to "illuminate with a white light the rear registration marker and render it clearly legible from a distance of fifty feet from the rear."[19]  Therefore, the Court need not answer the question of which law governs the display of license tags in this instance and the government's motion for hearing is denied.

The question then becomes, whether these "illumination statutes" apply to a temporary tag that is lawfully placed in the rear window of a vehicle,[20] instead of in the rear license plate "well."  The Court is unable to locate a decision in the federal or state courts that has applied either the Kansas or the Missouri statute to a temporary tag in the rear window of a vehicle.  A few cases were found that allow violations of § 8-1706(c) to provide the basis for a traffic stop, but these deal with valid stops made because the white registration lamp or "tag light" was not operating.[21]

Defendant argues that the temporary tag was lawfully placed in the rear window of the car, where the requirement of a "tag light" is both impracticable and unforeseeable, which raises a due process concern.  Initially, the Court agrees that the temporary tag was lawfully placed in the rear window of the vehicle.  The tag itself was simply a "paper tag," that would have disintegrated if placed on the rear bumper of the vehicle, where permanent tags belong.  Further, the government does not point the Court to any law that disallows such placement under either

---

[19] K.S.A. § 8-1706(c); Mo. Rev. Stat. § 307.075(1).

[20] The government does not contend that the mere fact of the placement of the tag was unlawful.  *See* Doc. 24 at 6 ("Indeed, the government concedes that this is a legal practice both under Missouri law and Kansas law.").

[21] *See, e.g.*, *United States v. Flowers*, No. 02-40108-01-SAC, 2003 WL 356057, at *1 (D. Kan. Jan. 13, 2003) (upholding initial stop based on reasonable suspicion of traffic violation); *State v. Krogman*, 97 P.3d 528 (table), 2004 WL 2085597, at *2–3 (Kan. Ct. App. Sept. 17, 2004) (same).

Kansas or Missouri law.[22]

Therefore, the only remaining issue is whether the lack of illumination on the rear window resulted in a traffic violation. "The language of the statute must be the primary source of any interpretation and, when that language is not ambiguous, it is conclusive 'absent a clearly expressed legislative intent to the contrary.'"[23] Neither illumination statute mentions temporary tags. The government argues that references to "rear registration plate" in the Kansas statute include temporary tags. The government is correct that Kansas law defines "registration number plate" as including "any plate, tag token, marker or sign issued under the provisions of this act for the purpose of identifying vehicles registered under the provisions of the motor-vehicle registration laws of this state."[24] Although this definition would include a temporary tag, it is still unclear if the reference to a "*rear* registration plate" in the illumination statute includes a temporary tag displayed in the rear window of a vehicle, instead of on the bumper. Missouri statutes specify "temporary permit or paper plate" when discussing temporary tags and the statutes do not define "rear registration marker."

Deputy Trammel testified that he has never seen a vehicle with a white light or lamp fastened onto the rear window to illuminate a temporary tag.[25] Further, since most temporary

---

[22]*See United States v. Edgerton*, 438 F.3d 1043, 1050 (10th Cir. 2006). The government does not appear to contest that the tag was lawfully placed in the rear window, so long as it is illuminated. Also, the Missouri statutes appear to authorize such placement of the tags. Mo. Rev. Stat. § 130.140(3) (requiring director of revenue to issue a 'temporary permit or paper plate' . . . for not more than thirty days of the date of purchase.'); § 301.130.

[23]*Miller v. C.I.R.*, 836 F.2d 1274, 1283 (10th Cir. 1988) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

[24]K.S.A. § 8-126a.

[25]Indeed, the Court questions the safety of such a requirement and notes that most temporary tags are replaced by a permanent tag no longer than 30 days after the temporary tag is issued. The government points the Court to only one unpublished (in the Federal Reporter) case concerning a traffic stop based on the violation of an illumination statute under similar circumstances. *United States v. Foster*, 65 Fed. Appx. 41, 44–45 (6th Cir. 2003). There, the Sixth Circuit decided that Kentucky's statutory scheme did not exempt temporary tags from its

tags are just that—temporary—any light constructed to illuminate the rear window of a vehicle, for the sole purpose of complying with the government's interpretation of this statute, would only be required for the first thirty days of any new purchaser's ownership tenure.[26]  A requirement that a light be constructed upon this area of all vehicles that display temporary tags in the rear window is impracticable.  The government's interpretation of the statute would allow for a prolonged detention of *any* driver of a vehicle displaying a temporary tag in the rear window.

The Court finds that the scope of Deputy Trammel's stop was limited by the initial reason for the stop—that he was unable to see a plate at all in the rear window.  As in *Edgerton*, Deputy Trammel's stop was extended because he had difficulty reading the license plate due to darkness.  Upon stopping defendant's pickup truck, he was able to see the tag number by simply shining his spot light on the tag.  The videotape clearly shows that Deputy Trammel spends almost no time examining the tag when he approached the driver's side window on foot.  As in *Edgerton*, Deputy Trammel should have instead explained to defendant why he initially pulled him over and then allowed him to continue on his way without producing any paperwork.  Although both parties briefly mention facts that may or may not have given rise to independent evidence of reasonable suspicion, such as defendant's nervousness, the government falls short of demonstrating that Deputy Trammel's observations when he first spoke with defendant were sufficient to establish reasonable suspicion.

---

illumination statute.  The tag in that case was also taped vertically on the rear window, creating "a reasonable suspicion that the driver was attempting to obscure the information that appeared on the tag, thus justifying further investigation by the trooper."  *Id.* at 45.  This case is not binding here and is inconsistent with the Tenth Circuit's decision in *Edgerton*.

[26]*See* K.S.A. § 8-2409; Mo. Rev. Stat. § 301.140(4).

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Ruiz-Lopez's Motion to Suppress (Doc. 12) is **GRANTED**.

**IT IS FURTHER ORDERED BY THE COURT** that the government's Motion for Hearing on Defendant's Supplement to Motion to Suppress (Doc. 25) is **DENIED**.

**IT IS SO ORDERED**.

Dated this  26th  day of April 2006.

                                              **S/ Julie A. Robinson**
                                              **Julie A. Robinson**
                                              **United States District Judge**